TOMMY R. COE, Employee, Plaintiff v. HAWORTH WOOD SEATING, Employer; and THE TRAVELERS INSURANCE COMPANY, Carrier; Defendants

No. COA03-1349

(Filed 7 September 2004)

**1. Workers' Compensation— trial return to work—receipt of benefits**

The Court of Appeals did not address a workers' compensation issue concerning a trial return to work because it was not necessary for the resolution of the matter before the Court. However, the Court agreed with plaintiff that the rule governing such work was not applicable because plaintiff was not receiving benefits.

**2. Workers' Compensation— link between work and injury— expert testimony**

A doctor's testimony in a workers' compensation case was sufficient to establish the casual link between plaintiff's work and an injury from the overuse of his left arm.

**3. Workers' Compensation— termination—refusal of work— work restrictions**

The evidence in a workers' compensation case was sufficient to support the Commission's findings and conclusions that plaintiff's termination was not related to a compensable injury. Plaintiff was justified in refusing a job that was not within his work restrictions and the evidence supports the finding that defendant terminated plaintiff for his refusal.

Appeal by defendants from Opinion and Award entered 16 June 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 June 2004.

*Crumley & Associates, P.C., by Pamela W. Foster and Amy S. Berry, for plaintiff-appellee.*

*Angelina M. Maletto, for defendant-appellants.*

HUDSON, Judge.

Defendants appeal an Opinion and Award entered 30 April 2003 by the North Carolina Industrial Commission, awarding compensation to plaintiff, Tommy R. Coe, for a work related injury. We affirm.

## BACKGROUND

We begin with a summary of pertinent facts, as found by the Full Commission. Plaintiff injured his right arm at work on 11 July 2000 while changing a gear on a molder machine that suddenly jerked. Plaintiff immediately reported the injury, received medical attention that day, and returned to work with restrictions including limited right arm use and no overhead lifting. Despite therapy, the pain, weakness, and intermittent paresthesia continued. On 23 August 2000, plaintiff's treating physician, Dr. Kevin Supple, diagnosed plaintiff's right arm injuries as a torn rotator cuff, shoulder rotator cuff tendinosis, and AC joint arthrosis.

On 12 September 2000, the morning of his scheduled shoulder surgery, plaintiff cancelled the procedure due to concerns about his heart condition, high blood pressure, and the uncertainty of a favorable outcome. On 21 September 2000, Dr. Supple gave plaintiff an injection and new work restrictions of no lifting more than ten pounds and no overhead use of the right arm. The doctor later revised the restrictions to no use of the right arm due to continued pain.

On 5 October 2000, plaintiff tripped at work, exacerbating his right arm injury. Dr. Supple prescribed medication, continued therapy, and continued work restrictions. Because of plaintiff's restricted use of his right arm, plaintiff performed his duties as a machine operator with his left hand only, and began to experience problems with his left arm which he reported to his employer.

Plaintiff's doctor sent a letter dated 27 November 2000 to the employer explaining the difficulties with the machine operator requirements and concerns about the overuse of the left arm. On 6 December 2000, plaintiff, Dr. Supple, and a rehabilitation professional met and decided that plaintiff needed to be permanently restricted to sedentary work, with no lifting over ten pounds, and no activity that could aggravate his right shoulder.

COE v. HAWORTH WOOD SEATING

[166 N.C. App. 251 (2004)]

Plaintiff took a voluntary layoff in the first two months of 2001 and was instructed by defendant-employer to return to work on 6 March 2001. However, plaintiff was hospitalized by a cardiologist and did not return to work until 11 April 2001.

On 18 May 2001, plaintiff saw Dr. Supple again for pain in his left arm. Defendant did not approve the visit since it classified plaintiff's left arm pain as a non-compensable injury. Dr. Supple diagnosed plaintiff with advanced rotator cuff tendinosis and a possible tear in the left rotator cuff which, in his opinion, was caused by overuse of the left arm while working under restrictions to the right. Dr. Supple placed plaintiff on work restrictions that included no lifting over ten pounds and no repetitive use of either arm.

Plaintiff returned to work and was assigned as a machine operator but with no particular machine specified. Plaintiff went home in the middle of the day on 25 May 2001 and decided not to return due to his inability to perform as a machine operator. On 30 May 2001, defendant-employer notified plaintiff that it considered him to have voluntarily resigned as of 25 May 2001, as per company policy.

On 12 July 2001, plaintiff's doctor signed an Industrial Commission Form 28U, indicating that plaintiff was unable to perform the position of a machine operator, which was sent to the Industrial Commission and defendants. At a hearing on 7 November 2001, Deputy Commissioner Bradley W. Houser awarded plaintiff ongoing total disability compensation from 12 July 2001 through the date of the order, in a lump sum, and continuing until such time as plaintiff returns to work or until further order of the Commission. In addition, the deputy Commissioner ordered the defendants to pay all costs associated with the cancelled 12 September 2000 surgery and costs of the Commission proceedings.

The Full Commission affirmed the Deputy Commissioner's Opinion and Award on 30 April 2003 with the following modifications: ongoing total disability payments shall begin from 18 May 2001 and defendants are not liable for costs of the cancelled surgery. Defendants appeal.

ANALYSIS

The standard of review in worker's compensation cases is well established. The Industrial Commission's findings of fact are "conclusive on appeal if supported by any competent evidence." *Perkins v.*

*Arkansas Trucking Serv.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903 (2000). This Court is precluded from assessing credibility or re-weighing evidence and will only determine if the record contains any evidence to support the challenged finding. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'ing denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). Only if the Commission acts under a misapprehension of the law, will the award "be set aside and the case remanded for a new determination using the correct legal standard." *Bollenger v. ITT Grinnell Indus. Piping, Inc.*, 320 N.C. 155, 158, 357 S.E.2d 683, 685 (1987). Here, competent evidence supports the Commission's findings and the application of the law.

**[1]** Defendant first contends that the North Carolina Industrial Commission (NCIC) erred by finding that plaintiff's inability to perform his job 18 May 2001 constituted a failed trial return to work. Plaintiff contends, however, that the statute and rule governing trial return to work (N.C. Gen. Stat. § 97-32.1 and Rule 404A) do not apply here, because plaintiff was not receiving benefits. Because we agree that the trial return to work framework is not applicable for the reasons articulated by plaintiff, and because we need not reach this issue in order to resolve the matter before us, we decline to address this issue.

**[2]** Defendant next contends that the evidence was insufficient to establish the work-relatedness of the left arm injury. However, this Court is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). "All that is necessary is that an expert express an opinion that a particular cause was capable of producing this injurious result." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 600, 532 S.E.2d 207, 211-12 (2000).

Here, upon careful review of the record, we find that Dr. Supple's expert testimony qualifies as competent evidence regarding the causal link between plaintiff's work and overuse of his left arm. Thus, this argument has no merit.

**[3]** Finally, defendant contends that the evidence failed to support the Commission's findings and conclusions that plaintiff's termination was not related to the compensable injury. Again, we disagree:

## FINDINGS OF FACT

11. According to the physical demands classification of the Dictionary of Occupational Titles, defendant-employer's job description of the Machine Operator positions indicates that these jobs with defendant-employer are heavy labor jobs, requiring frequent lifting of up to 60 pounds and pushing hand trucks which may weigh as much as several hundred pounds. These job descriptions are reflected in Plaintiff's Exhibits 2 and 4. According to the Dictionary of Occupational Titles, the position of Machine Operator usually is a medium capacity job.

\* \* \* \* \*

19. At this examination [18 May 2001], Dr. Supple assigned plaintiff permanent, light duty restrictions of no lifting over ten pounds, and no overhead or repetitive use of the right, or left arm. Plaintiff gave defendant-employer a copy of his restrictions, but was instructed to return to work at his normal job as a machine operator, although it could not be determined exactly upon which machine plaintiff was to work. Thereafter, plaintiff informed defendant-employer that he had forgotten to take his medication that day, and he was given permission to go home to take it. Upon arriving home, plaintiff determined that he would not return to work because of his inability to perform the machine operator job. On 30 May 2001, defendant-employer sent plaintiff a certified letter informing him that he had been deemed to have voluntarily resigned as of 25 May 2001.

\* \* \* \* \*

21. Based upon the credible evidence of record, the Full Commission finds that plaintiff's inability to perform the machine operator position provided to him by defendant-employer subsequent to 18 May 2001 was a failed trial return to work. Furthermore, because the machine operator position was not suitable given plaintiff's restrictions, his refusal to perform it was justified.

\* \* \* \* \*

## CONCLUSIONS OF LAW

4. The machine operator position provided by the defendants to plaintiff following his 11 July 2000 injury by accident was unsuit-

able, and his refusal of it was justified. N.C. Gen. Stat. § 97-32. Furthermore, defendants have failed to produce sufficient evidence upon which to find that plaintiff's termination on 30 May 2001 was for reasons unrelated to his compensable injury, and was for misconduct or fault for which a non-disabled employee would also have been terminated. Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996). Accordingly, plaintiff did not constructively refuse suitable work with defendant employer. N.C. Gen. Stat. § 97-32; Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996).

Here, Findings 11 and 19 clearly indicate that the machine operator job was not within plaintiff's work restrictions. The Commission found that, as a result, the job was not "suitable," and plaintiff was justified in refusing the job. Because the evidence supports the finding that defendant then terminated plaintiff for his refusal, the Commission's conclusion number 4 was supported by these findings, which, in turn, is consistent with the applicable law.

Affirmed.

Judges GEER and THORNBURG concur.